IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 97-20852 & 97-20914

_____


HARRISON J. GOLDIN, Liquidating Trustee;
TRUSTEE FOR THE MCORP TRUST; MCORP MANAGEMENT
TRUST; MCORP FINANCIAL INCORPORATED TRUST,

                                        Plaintiffs-Appellants,

        versus


PETER BARTHOLOW; MICHAEL D. MAGILL; CONNIE
COUCH; W. MACK GOFORTH; FRANK W. MCBEE;
THEODORE C. ROGERS; JOEL T. WILLIAMS, JR.;
GENE H. BISHOP; W.J. BOWEN; DOLPH BRISCOE, JR.;
JOHN T. CATER; DURWOOD CHALKER; LEO F. CORRIGAN, JR.;
W. FENTON GUINEE; EDWIN B. JORDAN; HERBERT D.
KELLEHER; MEREDITH J. LONG; BILL O. MEAD;
JERE W. THOMPSON; DWAIN D. HOWARD; JESS T. HAY;
DONALD J. STONE; ROBERT COCHRAN,

                                        Defendants-Appellees.

* * * * * * * * *

consolidated with

_____

No. 97-20915

_____


HARRISON J. GOLDIN, Liquidating Trustee;
TRUSTEE FOR THE MCORP TRUST; MCORP
MANAGEMENT TRUST,

                                        Plaintiffs-Appellants,

        versus

PETER B. BARTHOLOW, ET AL.,

                              Defendants,

PETER B. BARTHOLOW; MICHAEL D. MAGILL;
CONNIE COUCH; W. MACK GOFORTH; DWAIN D.
HOWARD; ROBERT COCHRAN,

                              Defendants-Appellees.

                    * * * * * * * * * *

                    consolidated with

                    _____

                       No. 97-20927

                    _____

In re:  HARRISON J. GOLDIN, Liquidating Trustee
for the MCorp Trust; MCORP MANAGEMENT TRUST; MCORP
FINANCIAL INCORPORATED TRUST,

                              Petitioner.

                    * * * * * * * * * *

                    consolidated with

                    _____

                       No. 97-20946

                    _____

HARRISON J. GOLDIN; TRUSTEE FOR THE MCORP
TRUST; MCORP MANAGEMENT TRUST; MCORP FINANCIAL
INCORPORATED TRUST,

                              Plaintiffs-Appellants,

        versus

PETER BARTHOLOW; MICHAEL D. MAGILL; CONNIE
COUCH; W. MACK GOFORTH; FRANK W. MCBEE;
THEODORE C. ROGERS; JOEL T. WILLIAMS, JR.;
GENE H. BISHOP; W.J. BOWEN; DOLPH BRISCOE, JR.;
JOHN T. CATER; DURWOOD CHALKER; LEO F. CORRIGAN,
JR.; W. FENTON GUINEE; EDWIN B. JORDAN;
HERBERT D. KELLEHER; MEREDITH J. LONG;
BILL O. MEAD; JERE W. THOMPSON; DWAIN D.

                          2

HOWARD; JESS T. HAY; DONALD J. STONE,

Defendants-Appellees.

---

Appeals from the United States District Court for the
Southern District of Texas

---

January 26, 1999

Before KING, Chief Judge, and GARWOOD and HIGGINBOTHAM, Circuit
Judges.

GARWOOD, Circuit Judge:

Appellant Harrison J. Goldin (Goldin) was the trustee of the MCORP Trust (the trust). Appellees served as officers (officer appellees) and directors (director appellees) of MCORP prior to Goldin's appointment. Goldin appeals on behalf of the trust the district court's grant of summary judgment to the appellees on the trust's misuse of estate property claims and the officer appellee's severance benefit claims, the denial of summary judgment on Goldin's declaratory judgment motion, the award to defendants of their attorney's fees, and the imposition of personal liability on Goldin individually. We vacate in part and reverse in part.

## Facts and Proceedings Below.

These cases originate in the collapse of the MCORP banking group, which filed for bankruptcy under Chapter 11 in 1989. The current litigation centers on the actions of the officers and directors of MCORP in the period following the bankruptcy and prior

3

to the appointment of Goldin as Trustee on July 1, 1994. Goldin claims that several officer appellees misused assets of the estate for their own personal benefit, engaging in a variety of prohibited transactions at its expense. The director appellees are claimed to be liable for these abuses because they assertedly failed to halt this alleged misconduct, approved of improper payments to the officers, and ultimately passed a blanket ratification of the officers' actions. The director appellees are also accused of wrongfully changing the company's pension plan for the insiders' benefit and to the creditors' detriment. Goldin also requested a declaratory judgment that the officer appellees were not entitled to severance payments. The appellees deny these allegations, and the officer appellees contend that they are entitled, as administrative claims, to severance payments and indemnification.

Goldin initiated the current action as an adversary proceeding in the bankruptcy court on May 5, 1995. Following consolidation with appellees' administrative claims for severance payments, the reference on the case was withdrawn by the district court on appellees' motion. Both parties filed motions for summary judgment, which the district court heard. The district court also held a bench trial on the issue of the severance payments. In an interlocutory order dated August 23, 1996, the district court granted the appellees' summary judgment on almost all issues, and a separate opinion and order in October 1996 found the officer appellees were entitled to their severance payments. On appeal,

4

this Court found that neither the interlocutory order nor the final judgment on severance benefits was an appealable final order.

Faced with the approach of the termination date for the trust, Goldin in May 1997 requested an extension of its term from the bankruptcy court. The bankruptcy court did not rule on the motion; and the district court again withdrew the reference, and denied the trustees' request on July 14, 1997, one day before the trust was scheduled to terminate. The district court also ordered that the trustee turn over all trust assets to the clerk of the district court, as provided for in the trust instrument. Goldin moved the district court for clarification of the order and appealed to this Court. We dismissed the appeal and denied rehearing. In September 1997, Goldin filed in the district court an emergency motion seeking authority to pay trust expenses.

The district court withdrew the reference from the bankruptcy court on the entire bankruptcy case in late August 1997. In October 1997, it issued a series of final orders that confirmed summary judgment in favor of appellees, granted the officer appellees the severance benefits, granted the appellees their costs as either indemnification or sanctions, granted appellees further attorney's fees pursuant to Rule 54, and again ordered the appellant to immediately turn over all trust assets. Goldin was additionally ordered to pay certain trust liabilities out of his own pocket, and ordered to personally complete certain tasks at his own expense.

Goldin then filed for a writ of mandamus to this Court,

challenging the district court's withdrawal of the reference and its imposition of liability against Goldin in his personal capacity. We carried this motion with the case. Goldin also appealed the merits, claiming that summary judgment on the misuse of estate property claims was inappropriate and challenging the award of severance payments to the officer appellees.

## Discussion

We are obligated to address issues of jurisdiction, including mootness, prior to addressing the merits of an appeal. *See Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir.1998). *See also Steel Company v. Citizens for a Better Environment*, 118 S.Ct. 1003, 1014-1016 (1998). We must satisfy ourselves of this Court's and the district court's jurisdiction even if the parties have not raised the issue, and if we find the district court did not have jurisdiction we have limited jurisdiction to correct the error. *See Arizonans For Official English v. Arizona*, 117 S. Ct. 1055, 1072 (1997).

We find that we need not reach the merits of the bulk of the appeal, since the trust's termination mooted some or all of the case even before the lower court rendered a final judgment, and in any case moots the appeal by Goldin. Since the district court lacked jurisdiction over the trust's claims against the appellees, we must vacate that portion of the judgment. Because Goldin and

6

those creditors having an interest in the trust's funds have been denied a chance to appeal an adverse judgment by matters for which they are largely not at fault, we also vacate the judgment awarding appellees severance pay and costs.

I. Termination of the Trust

To resolve the question of mootness, we first examine the terms of the instrument creating the trust. Mootness hinges on when the trustee's legal responsibilities terminated, thus depriving him of a legal interest in the outcome. We interpret trust instruments as we do contracts. *See Askanase v. Livingwell, Inc.*, 45 F.3d 103, 106 (5th Cir.1995). The interpretation of a contract is a question of law which we review *de novo*, unless the language of the contract is ambiguous and the lower court resorted to factual determinations of intent. *See Snug Harbor, LTD. v. Zurich Insurance*, 968 F.2d 538, 541 (5th Cir.1992) (review is *de novo* to the extent language is coherent and intent is clear on its face). Therefore, our review of the trust instrument here is *de novo*. The trust instrument, by its express terms, is to be construed under Texas law.

A. Terms of the trust

The district court found that the trust ended, by its own terms, on July 15, 1997. At the onset, it is crucial to note the purpose of the trust. While MCORP was in Chapter 11, and had been since 1989, the trust, established in July 1994, was specifically

7

designed to effectuate the rapid liquidation of the MCORP assets and distribution of them to the creditors.[1]  In line with this expectation, the trust instrument provides "The Trust shall terminate on the earlier of (1) the third anniversary of the Effective Date or (2) the date as of which substantially all of its assets have been reduced to Cash and distributed."[2]  This language amounts to a clear and express statement that the trust would terminate on the third anniversary of its effective date—i.e. on July 14, 1997—*notwithstanding* that by that time substantially all of its assets had *not* been reduced to cash or distributed.

Goldin argues that the second sentence of this section, "[i]f any assets of the Trust remain after termination, they shall be deposited with the Clerk of the Bankruptcy Court . . . unless the Trust Board and General Bank Trust Board direct, and the Bankruptcy Court approves, after notice and a hearing, an alternative

---

[1]    The instrument states, "The Trust shall be organized for the purpose of (i) liquidating and distributing non-Cash assets in an orderly fashion including litigating in an orderly fashion the causes of action owned by the Debtor on the Effective Date (ii) completing resolution of Contested Claims, and (iii) distributing Cash from the Contested Claims Reserves and the Operating and Reconciliation Reserve under the Plan."  Goldin contends that the mention of litigation in this section empowers him to continue any and all such actions indefinitely.  It should be noted, however, that the present claims were filed after the effective date of the plans. In any case, litigation is to be pursued as part of the project of orderly liquidation, not as an end in itself.

[2]    The effective date was required in the instrument to be no later than July 15, 1994.  Any modification of the effective date, and thus of the termination date, had to be accomplished through a full plan modification.

procedure," provides an extension mechanism. However, this "alternative procedure" provision refers to the establishment of an alternative to the disposition of residual assets after the termination of the trust. It does not envision extension of the trust itself. Indeed, the establishment of a procedure for distribution of residual assets provides further evidence that the trust was intended to terminate automatically. We find the language of the trust instrument unambiguous, and we agree with the court below that the trust terminated on July 15, 1997.

B. Winding Up Powers

Goldin does not now seriously dispute the above analysis or that the trust had terminated by July 15, 1997. However, he contends that although the trust may have then terminated, Texas' statutory "winding-up" powers apply and allow him to continue as trustee for a reasonable time, thus preventing mootness.[3] The

---

[3] In addition, Goldin argues throughout that the district court's withdrawal of the reference from the bankruptcy court was not correct and constitutes reversible error. However, he fails to argue that the allegedly wrongful withdrawal touches on the termination of the trust and his standing to pursue this appeal. His arguments on withdrawal relate only to the merits, which we do not reach. Any broader argument has been waived. Failure to brief and argue an issue constitutes waiver. *See Applewhite v. Reichold Chemicals*, 67 F.3d 571, 573 (5th Cir. 1995); *Hecchi Exploration Co., Inc. v. Holloway*, 862 F.2d 513, 525 (5th Cir. 1988). Goldin also argues that the lower court gave him an inadequate hearing under the bankruptcy laws prior to denying his motion to preserve trust assets. However, this argument is made only as a reason sanctions were inappropriate. Goldin does not claim that the method of denying the motion means the trust is still in existence. In any case, the terms of the trust are self-executing. No action by the court was required and no error of the court in handling

9

Texas Property Code explicitly provides for such powers. Tex. Prop. Code Ann. § 112.052 (Vernon 1995). However, all Texas trust instruments are governed first and foremost by their own terms. Section 111.002(a) provides that "[i]f the provisions of this subtitle and the terms of a trust conflict, the terms of the trust control . . ."; and, section 112.053 states that "[t]he settlor may provide in the trust instrument how property may or may not be disposed of in the event of failure, termination, or revocation of the trust." Tex. Prop. Code Ann. (Vernon 1995). Texas courts have recognized that winding-up powers are subject to the terms of the instrument: "The rule in such cases is that subject to the provisions of the trust instrument, the trustee has [winding-up powers]." *Kimble v. Baker*, 285 S.W.2d 425, 430 (Tex. Civ. App.-- Eastland 1955, no writ). *See also Cogdell v. Fort Worth National Bank*, 537 S.W.2d 304, 307 (Tex. Civ. App.--Fort Worth 1976, writ dism'd) ("There was nothing in the will creating the trust that is inconsistent with the trustee exercising such powers as are necessary to enable the trustee to wind up the trust"). We conclude that under Texas law, winding-up powers are a default provision that may be denied to a trustee if the instrument affirmatively indicates they are not contemplated after a specified termination date.

Here, we find that the language of the trust instrument is

such a request could affect our disposition of the case.

10

unambiguous in foreclosing the existence of winding-up powers after its third anniversary date. The instrument is solely focused on the rapid liquidation and distribution of trust assets. It is not a typical trust designed to insure preservation and growth of the corpus. The trust's entire function is winding-up, and we decline to find that the Texas default rule applies to provide it with additional winding-up powers after its stated termination date. In this case, such an addition would clearly defeat the terms of the trust.

The cases cited by Goldin invoking statutory wind-up power can be distinguished based on the nature of the trust instruments. All of the Texas cases involved testamentary trusts which provide for immediate distribution upon a set termination date.[4] The process of distribution is not instantaneous, so when the obligation to distribute does not *begin* until termination,[5] some residual power is clearly to be inferred. Because the need for such a power is so obvious in these cases, the statutory provisions are generally noted as a limitation on the trustee; "Appellant correctly states that upon termination as to appointed property , a trustee is

---

[4]     Some of Goldin's citations on this issue were simply not on point. In *O'Malley v. Stratton*, 831 S.W.2d 35, 38 (Tex. App.--El Paso 1992, no writ), the appellant conceded that wind-up powers applied to the instrument in question.

[5]     *Cf. Restatement, Second, Trusts* § 344 comment a ("By 'the time for the termination of the trust' is meant the time at which it *becomes* the duty of the trustee to wind up the trust."; emphasis added).

11

authorized only to 'wind up the affairs of the trust and to make distribution of the assets to the appropriate beneficiaries.'". *Nowlin v. Frost Nat. Bank*, 908 S.W.2d 283, 289 (Tex. App.--Houston 1995, no writ), *quoting* Tex. Prop. Code Ann. § 112.052 (Vernon 1995) (finding trust had not terminated).  With these types of instruments, the grant of winding-up power is merely a recognition of the powers necessary to effect distribution coupled with a restriction to a reasonable time.

Here, the instrument is not one which requires the insertion of the statutory default term.  It is a liquidating trust.  We find the imposition of further time for liquidation—winding-up—inconsistent with its terms. It is specifically designed to effect liquidation and distribution as soon as practical, and termination expressly occurs on the *earlier* of substantial final distribution or a set date.  There is thus not the inevitable period following termination when the administrative function of distribution is carried out that is found in the cases cited by Goldin.  Distribution is contemplated throughout, and the termination date provides the outer limit of the trustee's powers. The record indicates that the overwhelming bulk of the trust's initial assets were in fact distributed at the time of termination. Goldin's own pleadings admitted that the litigation against the directors and officers, and funds held pending resolution of the appellees' severance claims, in essence constituted the trust's

12

sole remaining assets.

In addition, the instrument provides a mechanism to deal with the problem of illiquid assets that may remain. Such assets were to be deposited with the clerk of the bankruptcy court, or another method could be employed with the approval of the trust board and the bankruptcy court. This provision for the unitary and intermediate disposition of trust assets further distinguishes this instrument from those in which winding-up powers are necessary.

Goldin has not cited, nor have we discovered, any Texas cases that deal with trusts that contemplated complete liquidation prior to a set termination date, or that utilized an intermediary to hold assets prior to final distribution.[6] Here, the purpose of the trust was the liquidation and distribution of the bulk of trust assets within a set time frame. The record indicates that this goal was largely met and that the trust design served its purpose. The trust's terms and express purpose foreclose any residual grant of powers to the trustee after its time had expired. We conclude that Texas law does not provide for wind-up powers for this trust.

---

[6]    We are not persuaded by the reasoning of *Botsford v. Haskins and Sells*, 81 Cal. App. 3d 780 (Cal. App. 1st Dist. 1978), cited by Goldin, which held that the trustee of a three-year liquidating trust had winding-up powers extending after the three years expired. We also note that the trust in *Botsford* apparently contained no language comparable *either* to that here providing for trust termination on the *earlier* of its third anniversary or conversion to cash and distribution of substantially all its assets *or* to that here providing for intermediate disposition of assets remaining on termination.

13

II. Mootness and Vacatur

Having concluded that the trust terminated July 15, 1997, we must examine the effects of this determination. Appellees contend that the termination of the trust stripped the trustee of standing and mooted the case. The trustee is thus barred from appealing the judgment, which is left in effect. While we agree that the bulk of the case is moot, we find that the district court's decision must therefore be vacated rather than rendered unappealable by the termination of the trust.

Mootness in this context is "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans For Official English v. Arizona*, 117 S.Ct. 1055, 1069 n.22 (1997), *quoting United States Parole Comm. V. Geraghty*, 445 U.S. 388, 397 (1980). A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation. *See Chevron, U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993).[7] A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents. *See Hogan v. Mississippi University for Women*,

---

[7] "A controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation. . . . A controversy can also become moot when 'the parties lack a legally cognizable interest in the outcome'." *Id*.

14

646 F.2d 1116, 1117 n.1 (5th Cir. 1981). When the trust terminates, the trustee no longer has any personal, substantial interest in the outcome of the litigation. His lack of standing would thus render the trust's claims against the appellees moot from the moment of termination.[8] The termination may have similarly mooted the claims by the appellees for severance benefits and costs from the trust. In any case, the termination stripped Goldin of standing to appeal, thus causing mootness before this Court.

We have no power under Article III to decide the merits of a case that is moot when it comes before us. *See Manges v. Seattle-First National Bank*, 29 F.3d 1034, 1038 (5th Cir. 1994) (distinguishing Article III mootness inquiry from equitable mootness in bankruptcy). We retain authority to order *vacatur* of a moot case, however. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 115 S.Ct. 386, 390 (1994). Our disposition of a moot case may depend on when mootness occurred.

If mootness occurred prior to the rendering of final judgment by the district court, *vacatur* and dismissal is automatic. The district court would not have had Article III jurisdiction to render the judgment, and we cannot leave undisturbed a decision that lacked jurisdiction. *See Iron Arrow Honor Society v. Heckler*,

---

[8] The exceptions to mootness involving class-actions and actions capable of repetition but evading review are not applicable to this case.

15

104 S.Ct. 373, 376 (1983); *New Left Education Project v. Board of Regents of University of Texas System*, 472 F.2d 218, 220 (5th Cir. 1973), *vacated on other grounds*, 414 U.S. 807. ("If the case became moot before a final adjudication, we must vacate the judgment and direct that the case be dismissed. The district court has no power to decide moot causes.").[9]

---

[9]     *See also Blackmar v. Lichtenstein*, 578 F.2d 1273 (8th Cir. 1978), and on subsequent appeal, *Blackmar v. Lichtenstein*, 603 F.2d 1306 (8th Cir. 1979). In these cases, Blackmar, as successor trustee of employee profit sharing trusts of Liberty Loan Corporation (Liberty), filed suit against former trustees under section 10(b) of the Securities Exchange Act of 1934 and also asserted pendent state law breach of fiduciary duty claims. Subsequently, and after Blackmar indicated his intention to add Liberty as a party defendant and assert all those claims against it also, Liberty for that reason removed him and appointed new trustees who filed a motion to be substituted as plaintiffs. The district court assumed *arguendo* that Blackmar had standing, did not rule on the motion to substitute, dismissed the section 10(b) allegations on the merits for failure to state a claim, and dismissed the state law claims without prejudice. Blackmar timely filed a motion to alter or amend the judgment and a motion to file an amended complaint adding Liberty as a defendant. The district court denied both motions, ruling that the tendered amended complaint failed to state a section 10(b) claim. On Blackmar's appeal, the Eighth Circuit vacated the dismissal and remanded to the district court, holding that before ruling on the merits the district court should have first determined whether Blackmar had standing to pursue the case. *Id*., 578 F.2d at 1276. The district court on remand ruled that Blackmar was no longer a proper party, declined to rule on his motion for instructions as trustee, and granted the motion of the successor trustees to be substituted as plaintiffs. Blackmar again appealed, and the Eighth Circuit affirmed, stating:

> "Blackmar's argument that Liberty has violated its fiduciary duty under ERISA by displacing him in order to preclude a suit being filed against Liberty is not germane to the issue. If Liberty is in collusion with the successor trustees for an illegal purpose the successor trustees may be held liable if they fail to

16

If a case becomes moot on appeal, the general rule is still to vacate the judgment of the lower court and remand with instructions to dismiss the case as moot. *See, e.g., United States v. Munsingwear*, 71 S.Ct. 104, 106-07 (1950)(leading case); *United States v. Sarmiento-Rozo*, 592 F.2d 1318, 1321 (5th Cir. 1979). However, this *Munsingwear* doctrine is an equitable one, justified as a means of avoiding the unfairness of a party's being denied the power to appeal an unfavorable judgment by factors beyond its control. *See Northshore Development, Inc. v. Lee*, 835 F.2d 580, 583 (5th Cir. 1988). Accordingly, if the mootness can be traced to the actions of the party seeking *vacatur*, the decision of the lower court will usually be allowed to stand. *See Bonner Mall*, 115 S.Ct. at 391-92 (party that voluntarily settled case, thus creating

---

carry on with any fiduciary obligations under the trust.

. . . .

This court cannot deem Blackmar a fiduciary, though he once was, and allow him to bring a suit in a fiduciary capacity where the trust instrument provided for a method of appointing trustees and that method was followed. In short, Blackmar no longer has an interest in this suit.

Blackmar's motion for application for instructions as trustee is moot in view of the district court's ruling that he is not a real party in interest." *Id*., 603 F.2d at 1310.

While not directly on point, these cases taken together indicate that trial courts cannot resolve substantive questions when the purported trust representative before them has been replaced during the suit, and that a cause sought to be maintained for a trust by a former trustee is moot.

17

mootness, is not entitled to *vacatur*); *Arizonans*, 117 S.Ct at 1071-72.

For the reasons stated earlier, we find that the trust terminated automatically on July 15, 1997. This was prior to the entry of any final, appealable judgment in the case.[10] It is by no means clear to us that the district court had the power to somehow maintain the status quo pending final judgment in the face of the trust instrument's terms, but in any event its actions demonstrate without a doubt that it did not intend to do so. The district judge stated in his final orders that the trust "was dead and has been dead since July 15th, 1997." He characterized the continuation of efforts by the trustee after this point as "simple disobedience." These statements are inconsistent with an attempt by the district court to defer termination of the trust past its allotted time.

We thus need not make an equitable determination under *Munsingwear* and *Bonner Mall* with regard to the trust's claims against the appellees, since we find that the case was moot prior to the district court's decisions.[11] The district court had no

_____

[10]   The district court had purported to render final judgment on the officer's severance benefit claims and interlocutory orders on other matters, but this Court found the orders were not appealable final judgments.

[11]   We note that while Goldin has not linked his request for *vacatur* to the *Munsingwear* doctrine, he has pointed out the inequity of allowing this unappealable judgment to stand. This is not a case in which a party fails to request *vacatur* following a

18

jurisdiction to render judgment on these claims. The district court's judgment so far as it disposes of the trust's misuse of estate property claims and action for declaratory judgment is thus vacated and those claims are dismissed as moot for want of a party plaintiff having a legally cognizable interest in the outcome.

The effect of the termination on appellees' claims against the trust is somewhat more difficult to resolve. The classic cases of mootness due to changed circumstances involve *plaintiffs* whose relations to the case have changed. Because of the liberal allowance for substitution in the federal rules, cases in which a defendant's change in status leads to mootness are rare. *See* 15 *Moore's Federal Practice* §101.94[3] (3d ed. 1998).

Here, however, the officer appellees have an undeniable interest in recovering the severance payments that they claim they are owed. The difficulty is that the party they seek to recover from, and which resisted their claims in court, has, as they have consistently insisted, ceased to exist. They have been in effect litigating against an inert lump of assets while continuing to leave the trust—which has terminated and is not a legal entity—as their named opponent, and without ever seeking a substitution of parties.

It is a standard truism that "[t]here can be no live controversy without at least two active combatants." *See Martinez*

_____

clear determination of mootness.

19

*v. Winner*, 800 F.2d 230, 231 (10th Cir. 1986). The standing of both parties must be inquired into as part of the Article III jurisdictional inquiry. "Standing to sue or defend is an aspect of the case or controversy requirement." *Arizonans*, 117 S.Ct. at 1067. Generally, the issue of mootness due to the loss of standing of a party is phrased in the plural so as to require that both parties to an action have maintained standing. *See, e.g., Sierra Club v. Glickman,* 156 F.3d at 619 ("a matter is moot for Article III purposes if . . . the parties lack a legally cognizable interest in the outcome.").

But despite this general language, courts have recognized that the standing inquiry is fundamentally different in the rare case where the defendant is its focus. *See, e.g.*, *People v. Highland Irrigation Co.*, 893 P.2d 122, 127 (Colorado 1995) (en banc) (finding that defendant had standing to raise affirmative defense, and noting that "the rules for determining whether a plaintiff has standing are simply inapplicable to the defendants"). It has been argued that a standing inquiry involving defendants is really part of a broader examination of the case's justiciability. *See Natural Resources Defense Council, Inc. v. Jamison*, 787 F.Supp. 231, 235 n.1 (D.C.D.C. 1990) (noting in dicta that the Article III question when defendant's standing is involved is whether defendant has sufficient interest to present the court with a justiciable controversy). Cases such as *in rem* actions illustrate that actions

20

in which the plaintiff has valid standing may continue in the absence of any defendant whatsoever. The trust's termination and Goldin's lack of standing thus arguably may not have automatically terminated the district court's jurisdiction of the claims against the trust, as it did Goldin's claims against appellees.

However, whatever other effect the termination might have, it makes it impossible for us to hear an appeal pressed in the name of the defunct trust by the former trustee on any point, including the claims made by the appellees as plaintiffs. *See Arizonans,* 117 S.Ct. at 1067 ("The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance."); *Diamond v. Charles*, 106 S.Ct. 1697, 1708 (1986) (intervenor who lacked standing could not appeal in place of defendant). All parties, whether defendants or plaintiffs below, must meet the requirements of Article III standing when appealing to this Court.[12] Since Goldin lacks an

---

[12] The fact that the plaintiff seeks to enforce a judgment against the defendant will almost always insure that the defendant has standing to appeal an adverse judgment. However, in the unique contexts in which the issue arises, courts have uniformly held that at least one appellant must have Article III standing. Thus while intervenors may proceed under Rule 24 without meeting the standing requirements, if they are the sole party to take an appeal they must independently satisfy Article III. *Cf*. *Ruiz v. Estelle*, 1998 WL 809293 at *14 (5th Cir. 1998) (party may intervene without demonstrating standing when other parties on both sides of the litigation have standing); *United States v. State of Texas*, 158 F.3d 299, 304 (5th Cir. 1998) (intervenor defendant may independently pursue appeal since it had sufficient interest in reversing adverse judgment below). Similarly, we have barred a party that was the defendant in an interpleader action from

21

adequate interest to proceed with an appeal, his appeal is moot. Accordingly, we apply *Munsingwear's* equitable *vacatur* doctrine. Since we find *vacatur* warranted under *Munsingwear*, we need not determine whether the district court lost jurisdiction over appellees' claims against the trust immediately upon its termination.

Our resolution of this question must begin with a recognition that dismissing the appeal due to Goldin's lack of standing, as appellees argue we should, would lead to the problem at the heart of the *Munsingwear* doctrine—that an order may become unappealable due to no fault of the losing party, thus denying review of a possibly erroneous decision. *See Northshore*, 835 F.2d at 583 (finding *vacatur* not warranted when party requesting it was at fault, having failed to press its appeal in state court); *Bonner Mall*, 115 S.Ct. at 391 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.").

We recognize that application of *Munsingwear* has sometimes been rejected when a party's change in status robs it of standing

---

pursuing an appeal when the directly aggrieved party withdrew. Since the party was not itself asserting a claim to the fund, it lacked standing to challenge a determination of priority to that fund, and its interest alone was insufficient to allow an appeal. *See Rohm & Hass Texas, Inc. v. Ortiz Brothers Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994).

22

and mootness results from the unwillingness of a successor to pursue the appeal. *See Karcher v. May*, 108 S.Ct. 388, 395 (1987) (former state legislators were not entitled to *vacatur* since decision was not unreviewable—their successors could have appealed, but chose not to). Here, however, the trust has terminated and no successor has yet emerged. *Cf. United States v. Zolin*, 109 S.Ct. 2619, 2623 n.3 (1989) (discovery issue related to criminal and civil IRS investigation was not mooted by defendant's death since civil audit could affect liability of estate, represented before the court by decedent's widow). We find it unlikely that the assets themselves can be held responsible for their failure to appeal. The ability of the creditors to appeal without a declaration that one or all of them is a successor in interest to the trust is procedurally unclear. *See Karcher*, 108 S.Ct. at 392 ("[W]e have consistently applied the general rule that one who is not a party or has not been treated as a party to judgment has no right to appeal therefrom.")

Thus, despite Goldin's status as a defendant, under the unique facts of this case he—and the beneficiaries of the trust—have been denied any meaningful ability to appeal. This result cannot be traced to any fault on the part of Goldin. He legitimately advanced a nonfrivolous, if ultimately unsuccessful, argument for the continuation of his powers in an attempt to stave off mootness. As for the creditors, a party is under no duty to intervene if the

23

plaintiff has proceeded against the wrong party. *See Cheramie v. Orgeron*, 434 F.2d 721, 725 (5th Cir. 1970) (successors in interest to dead defendant not required to intervene). In any case, we find the creditors' failure to attempt to prevent Goldin from continuing to represent them was not unreasonable under all the circumstances.

The party at fault in creating this situation is not Goldin, but the appellees. They, unlike Goldin, argued that the trust had terminated. They seemingly remained oblivious to the necessary effect this contention had on the propriety of continuing their litigation solely against the defunct trust. Under the Rules of Civil Procedure, a party is allowed, and strongly encouraged, to substitute the proper defendant when circumstances change so as to render the prior defendant not the real party in interest. *See* Fed. R. Civ. P. Rules, 17, 19, 21, and 25. Had the appellees recognized that their own arguments created doubts about whether Goldin was properly before the court and simply sought substitution of the trust assets or other proper defendant or defendants, this litigation would have become much less troublesome.

Because the district court declined to create a new trust or other mechanism to handle the suit, the proper course of action might have been to name the assets themselves as an *in rem* defendant. This likely would have allowed the creditor beneficiaries to intervene directly, and clarified the need for them to do so. As intervenors with a concrete individual stake in

24

the status of the former trust's funds, they would presumably have had standing to appeal a judgment in favor of appellees as plaintiffs. *See United States v. State of Texas*, 158 F.3d 299, 303-304 (5th Cir. 1998) (intervenors had standing to appeal federal court's decision for plaintiff when the decision deprived them of a right they had gained in state court). Appellees should have recognized that the termination they sought raised issues of standing and mootness that needed to be addressed. Instead, appellees allowed the district court to erroneously continue to proceed on the merits.

The district court lacked Article III power to resolve the trust's misuse of estate property and declaratory judgment claims, and we vacate so much of the judgment as disposes of those claims and direct that they be dismissed as moot. Goldin's requests for mandamus relief are denied. We also conclude that the appellees' claims against the trust, regardless of whether they were moot before final judgment below, are moot on appeal, and because this mootness is not traceable to fault on Goldin's part, we vacate under *Munsingwear*.[13] We remand with instructions to dismiss the

---

[13] This includes not only appellees' severance benefits claims, but also their request for attorneys' fees. Some of our cases dealing with the award of fees in civil rights suits have found that mootness of the underlying action does not moot a controversy over attorney's fees already incurred. *Nash v. Chandler*, 859 F.2d 1210, 1211 (5th Cir. 1988); *see Campanioni v. Barr*, 962 F.2d 461, 464 (5th Cir. 1992). In such cases, both parties retain an interest in recovering or retaining the fees even after losing such interest in the underlying action. The judgment will add to or be

25

consolidated cases as moot.[14]

III. The Imposition of Personal Liability

In its closing and severance orders, the district court ordered Goldin individually to pay certain trust expenses in his personal capacity. This portion of the judgment is clearly not moot. Goldin personally has suffered an injury in fact that is not affected by trust termination and his loss of trustee status. The issue is thus not mooted. Appellees contend that Goldin has waived this issue due to his failure to appeal in his personal capacity. We disagree. Rule 3(c) of the Federal Rules of Appellate Procedure states that an appeal will not be dismissed "for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c). Goldin clearly has challenged the imposition of personal liability on appeal. We reverse the district court's imposition of personal liability on the former trustee.

The closing and severance order did not specify the grounds on which Goldin was held personally liable for trust expenses. Goldin contends the award constituted an unauthorized modification of the bankruptcy plan, while appellees defend the award as a sanction.

---

taken from their funds. *Id*. Here, however, the terminated trust and the former trustee had no legally cognizable interest in the disposition of funds from the former trust—as attorney's fees or otherwise—at the time of the appeal.

[14] Nothing in this opinion or our mandate addresses whether, under what circumstances, or when any or all of the cases may be revived in whole or in part should a proper party appropriately emerge.

While we find the latter interpretation more convincing,[15] the result in either case is the same. If the award was a plan modification, it had to be labeled and approved as such. It clearly was not, and nothing on the record indicates any attempt to modify the plan. If the award was intended as a sanction, on the record before us it lacked the predicate notice, hearing, and findings our cases require.

We review the imposition of sanctions for abuse of discretion. *See Riley v. City of Jackson*, 99 F.3d 757, 759 (5th Cir. 1996). The sanctions here might be interpreted as stemming from a *sua sponte* Rule 11(c)(1)(B) decision. If so, the district court was required to afford Goldin notice describing the offending conduct and allow him an opportunity to show cause why sanctions should not be imposed. *See Merriman v. Security Insurance Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir.1996). The record reveals that Goldin was given no such notice or opportunity. No formal order was issued, and we are unconvinced that the district court's brief mention of cost shifting provided such notice. The statements in the record are as consistent with the determination that appellees are entitled to contractual indemnification as they are with notice of sanctions, and there is nothing in the record which would give any notice to Goldin that he might be held *personally* liable as a

---

[15] At the time, the district court found that Goldin's lawsuit was "abusive," and made other statements indicating his displeasure with Goldin.

27

sanction for his conduct. We find that imposing Rule 11(c)(1)(B) sanctions without notice and hearing would constitute an abuse of discretion by the district court. Moreover, the record here does not reflect such "unusual circumstances" (see Advisory Committee notes to 1993 amendments to Rule 11) as would authorize Rule 11 sanctions against a represented party but not his counsel.

Alternatively, the sanctions might be interpreted as an exercise of the district court's inherent powers. The imposition of sanctions using inherent powers must be accompanied by a specific finding of bad faith. We have reversed sanctions awards when, as here, the district court merely made general complaints about the sanctioned party. *See Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir.1995) ("Although the district court clearly indicated its displeasure at Byrd's conduct of the case, it failed to make a specific finding of bad faith."). *Cf. Travelers Insurance Co. v. St. Jude Hospital of Kenner, LA., Inc.*, 38 F.3d 1414, 1417 n.6 (5th Cir. 1994) (finding of bad faith for purposes of section 1927 supported by five paragraphs in order specifically addressing plaintiff's conduct). Moreover, the standard for the imposition of sanctions using the court's inherent powers is extremely high. The court must find that the "very temple of justice has been defiled" by the sanctioned party's conduct. *See Boland Marine & Mfg. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995). Nothing in the record reflects conduct that reaches this level. We find that the

28

imposition of sanctions using the court's inherent powers when no bad faith is specifically found and the record does not support the required high level of culpability constitutes an abuse of discretion.

We conclude that the district court abused its discretion in holding Goldin personally liable for trust expenses under any theory; and we accordingly reverse the district court's order requiring Goldin to personally pay any trust expenses.

### Conclusion

In conclusion:

(1) we vacate so much of the judgment below as disposes of the trust's misuse of estate property and declaratory judgment claims, and remand those claims to the district court with directions that they be dismissed as moot;

(2) we vacate so much of the judgment below as disposes of appellees' claims against the trust, and remand those claims to the district court with directions that they be dismissed as moot;

(3) we deny Goldin's requests for mandamus; and

(4) we reverse the district court's order requiring that Goldin personally pay certain trust expenses.

VACATED in part and REMANDED with directions; REVERSED in part; MANDAMUS DENIED[16]

---

[16] Except insofar as granted by our action herein, all pending undisposed of motions are denied as moot.