# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 20, 2013

No. 12-10091

Lyle W. Cayce
Clerk

NATIONAL RIFLE ASSOCIATION OF AMERICA, INCORPORATED;
REBEKAH JENNINGS; BRENNAN HARMON; ANDREW PAYNE,

Plaintiffs - Appellants

v.

STEVEN C. MCCRAW, in his official capacity as Director of the Texas
Department of Public Safety,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This case presents a constitutional challenge to Texas's statutory scheme, which does not allow 18-20-year-old adults to carry handguns in public. We must hold that the state scheme withstands this challenge, because we are bound by a prior panel opinion of this court, *NRA v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) (hereinafter *BATF*).

## FACTS AND PROCEEDINGS

*Statutory Framework*

No. 12-10091

In 1871, the State of Texas first prohibited individuals from carrying handguns in public. The current version of this proscription, codified in 1973, provides that a "person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun . . . if the person is not: (1) on the person's own premises or premises under the person's control; or (2) inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control." TEX. PENAL CODE § 46.02(a). This crime is punishable by imprisonment for up to a year and a fine of up to $4,000. *Id.* § 46.02(b); *see id.* § 12.21.

In 1995, Texas created an exception to this general criminal prohibition when it enacted the concealed licensing program. The program allows persons who acquire concealed carry licenses to carry concealed handguns in public. TEX. GOV'T CODE § 411.172(a). Licenses cost $140 each and applicants must submit their fingerprints and their criminal, psychiatric treatment, and drug treatment histories. *Id.* § 411.174. They must also successfully complete a 10-hour course, which includes both a written exam and a practical component to demonstrate proficiency. *Id.* § 411.174(a)(7); *see id.* § 411.188. Moreover, in order to qualify for a license, an applicant must, among other things, be "at least 21 years of age" and "fully qualified under applicable federal and state law to purchase a handgun."[1] *Id.* § 411.172(a).

During legislative debate on the concealed licensing program, several legislators advocated for the 21-year-old minimum-age requirement because they believed that younger individuals were generally not mature enough to carry and handle handguns in public. In 2005, Texas relaxed the licensing requirements to allow persons under 21 who had military training to apply for

---

[1]   Under a federal statute recently upheld as constitutional by this court, 18 U.S.C. § 922(b)(1), federally licensed firearms dealers may not sell handguns to persons under 21. *BATF*, 700 F.3d at 212. Texas law, however, permits those 18 and over to buy handguns.

2

concealed handgun licenses, *id.* § 411.172(g), because this group's "extensive training in handling weapons" mitigated the legislature's concern that persons under 21 generally were not sufficiently mature to handle guns responsibly. Nevertheless, Texas's statutory scheme in effect prohibits the majority of 18-20-year-olds from carrying a handgun in public: the general criminal provision sets as the default rule that Texans may not carry a handgun in public, and the civil licensing law makes 18-20-year-olds ineligible for the concealed handgun license exception to this default rule.[2]

*Procedural Background*

Three individual plaintiffs, ages 18-20, and the National Rifle Association ("NRA"), on behalf of its 18-20-year-old members, brought this constitutional challenge to Texas's constructive ban on 18-20-year-olds carrying handguns in public. Each of the three individual plaintiffs claim that they wish to carry a handgun in public for self-defense but are unable to apply for one solely because of their age. While this appeal was pending, however, two of them, Rebekah Jennings and Brennan Harmon, turned 21. The third, Andrew Payne, will not turn 21 until July 2013.

Following discovery, the parties filed cross-motions for summary judgment. The district court denied plaintiffs' motion and granted the state's motion. The court first addressed the question of standing. It concluded that the individual plaintiffs had standing to challenge the licensing law, because they had presented evidence that, except for their age, they qualified for concealed handgun licenses. Moreover, they had each alleged that, but for their inability to get a license, they would carry a handgun in public for self-defense. But the court held that plaintiffs lacked standing to challenge the general criminal provision because they had not alleged that they wanted to carry

---

[2] For clarity, we refer to § 46.02 as the "general criminal provision," § 411.172 as the "licensing law" or "licensing program," and the two statutes, working together, as the "Texas scheme."

No. 12-10091

handguns without a license, which the court concluded was necessary to show the credible threat of prosecution under the law required for Article III standing. The court recognized that it need not address whether the NRA had associational standing, since "[o]nce a court has determined that at least one plaintiff has standing, it need not consider whether the remaining plaintiffs have standing to maintain the suit."

Turning to the merits, the district court upheld the handgun licensing law on the ground that "the Second Amendment does not confer a right that extends beyond the home." Thus, a prohibition on carrying a handgun in public did not infringe on plaintiffs' Second Amendment rights. And, because neither age nor non-military status is a suspect classification, the court applied rational basis scrutiny to the Texas law and rejected plaintiffs' equal protection claim. Plaintiffs appeal.

## STANDARD OF REVIEW

This court reviews questions of standing *de novo*. *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 236 (5th Cir. 2010). The parties seeking access to federal court bear the burden of establishing their standing. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 635 (5th Cir. 2012). The court "review[s] a district court's grant of summary judgment *de novo*, applying the same standard as did the district court." *Stults v. Conoco, Inc.*, 76 F.3d 651, 654 (5th Cir. 1996). We "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003). We examine *de novo* the constitutionality of state statutes. *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007).

## DISCUSSION

Plaintiffs appeal the district court's decision that they lack standing to challenge Texas's general criminal provision barring persons from carrying

handguns in public. They also claim that the district court erred in ruling that the Texas scheme regulating persons carrying handguns in public does not violate the Second Amendment rights of, or deny equal protection to, non-military or non-veteran 18-20-year-olds. Plaintiffs contend that 18-20-year-olds have full Second Amendment rights and that the fundamental right to carry a handgun for self-defense extends to carrying a handgun in public. Texas opposes these contentions and also alleges that plaintiffs Jennings's and Harmon's claims are moot because they are now 21 years old.

### A. Mootness

Although all parties agree that the claims raised by Payne are not moot, Texas argues that the court should dismiss Jennings's and Harmon's claims as moot because both are now 21.[3]

If a claim is moot, it "presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents." *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999). A claim becomes moot when "the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Mootness in this context is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its

---

[3] The parties also agree that the district court was correct that it need not address the NRA's associational standing because *Massachusetts v. EPA* holds that "[o]nly one of the petitioners needs to have standing to permit us to consider the petition for review." 549 U.S. 497, 518 (2007); *see also Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (holding that because it was clear that union members had standing, the Court need not consider the standing issue as to the Union or Members of Congress who were parties to the case). Plaintiffs contend that the court need not address Jennings's and Harmon's standing for the same reason. We disagree. While *EPA* and *Bowsher* give courts license to *avoid* complex questions of standing in cases where the standing of others makes a case justiciable, it does not follow that these cases permit a court that *knows* that a party is without standing to nonetheless allow that party to participate in the case. *Cf. Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 501 n.18 (5th Cir. 2004) ("[W]hen one of multiple co-parties raising the same claims and issues properly has standing, we do not need to *verify* the independent standing of the other co-plaintiffs." (emphasis added)).

existence (mootness)." *Goldin*, 166 F.3d at 717 (citation and quotation marks omitted).

Our court's recently issued opinion in *BATF* controls this issue. In that case, the same plaintiffs appealing here brought constitutional challenges against a federal law prohibiting federally licensed firearms dealers from selling handguns to persons under 21 years of age.[4] *BATF*, 700 F.3d at 188. Addressing the standing of the now-21-year-old plaintiffs Jennings and Harmon, the court held that, "[b]ecause they have aged out of the demographic group affected by the ban at bar, the issues on appeal are moot as to them." *Id.* at 191. The court then concluded that "Payne and the NRA, on behalf of its under-21 members, have standing." *Id.* We reach the same conclusion. Jennings's and Harmon's claims are moot, as these two plaintiffs have aged out of the 18-20-year-old range.

B. *Standing*

Although the remaining plaintiffs continue to have the requisite personal interest to pursue their claims, their claims must also satisfy the injury requirement for Article III standing. The district court determined that plaintiffs had such standing to challenge the concealed handgun licensing law, but concluded that plaintiffs lacked standing to challenge the general criminal provision banning carrying a handgun in public. It came to this conclusion based on the fact that plaintiffs did not allege "that they desire to carry a handgun openly (as opposed to concealed), concealed without a license, or in a manner inconsistent with the limitations governing licensed concealed carry." According to the court, "because the possession of a validly issued [license] excepts the license holder from prosecution . . . , Plaintiffs have not

---

[4] Because the statute challenged in *BATF* was a federal statute, the plaintiffs brought their claims directly under the Second Amendment and through the equal protection component of the Fifth Amendment.

demonstrated a credible threat of prosecution" necessary to show injury. Both plaintiffs and the state argue that the court erred in this conclusion.

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). When asking a federal court to engage in pre-enforcement review of a criminal statute, a plaintiff need not violate the statute; he may meet this injury requirement by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Id.*

The district court erred in its standing analysis. Plaintiffs maintain that "Texas must permit them *some manner* of exercising their fundamental right to carry a handgun."[5] The criminal provision forbids them from carrying a handgun altogether. The licensing program declines to grant their age group, specifically, a limited exception in the form of a concealed handgun license from this alleged burden on their Second Amendment rights. Thus, both laws, as part of a statutory scheme, combine to deprive plaintiffs of their alleged constitutional rights. While striking down the age restriction in the concealed handgun licensing law would grant the plaintiffs the relief they seek – some manner in which to legally carry a handgun in public – and lift the threat of prosecution, so would invalidation of the general criminal provision alone,

---

[5] Texas argues that "plaintiffs' sole contention" is that they are constitutionally entitled to apply for concealed handgun licenses. Although the state concedes that plaintiffs have standing, it asserts that "plaintiffs' failure to support their constitutional challenge to section 46.02's prohibitions on unlicensed or exposed handgun carriage should lead the Court to reject their claims on the merits" after the court determines that the plaintiffs do have standing to challenge the criminal provision. Texas's understanding, however, is plainly refuted by plaintiffs' Second Amended Complaint, in which they allege that the licensing provision and criminal provision, in concert, "prohibit law-abiding adults between the ages of eighteen and twenty, who are not or have not been in the United States armed forces, *from carrying a handgun outside the person's own premises or automobile*." (Emphasis added.) Plaintiffs are clearly contending that the two statutes unconstitutionally prevent them from carrying a handgun in public, not merely that the licensing provision bars them from applying for a license.

because then plaintiffs could carry guns openly, even if they could not obtain a license to carry them concealed. Plaintiffs, therefore, have standing to challenge both laws together, because together they bar 18-20-year-olds from carrying handguns in public in Texas.

### C. Second Amendment claim

Plaintiffs contend that the district court erred in upholding this Texas scheme, because such a bar violates the Second Amendment. They argue that a scheme that bans 18-20-year-olds from carrying handguns in public, either openly or concealed, is an unconstitutional infringement on 18-20-year-olds' right to use handguns in self-defense. Texas responds that its scheme is the type of longstanding prohibition that the Supreme Court recognized as lawful in *District of Columbia v. Heller*, 554 U.S. 570 (2008).

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.[6] In *Heller*, the Supreme Court struck down a D.C. law that banned handgun possession and required all firearms in the home to be kept in an inoperable state, because the statute violated this amendment. 554 U.S. at 635. After conducting an analysis "of both text and history," *id.* at 595, the Court recognized that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *id.* at 592. The "*central component* of [this] right" is self-defense. *Id.* at 599. Because the law at issue in *Heller* "bann[ed] from the home the most preferred firearm in the nation to keep and use for protection of one's home and family, [it] fail[ed] constitutional muster." *Id.* at 628-29 (citation and quotation marks omitted).

---

[6] The Supreme Court has held that the Second Amendment right is fully applicable to the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010). As of the Texas notes, the Fourteenth Amendment itself references the age of twenty-one, not eighteen. *See* U.S. CONST. amend. XIV, § 2.

No. 12-10091

Despite holding that the statute before it was unconstitutional, the Court expressly noted that "the right was not unlimited, just as the First Amendment's right of free speech was not." *Id.* at 595. It recounted that, historically, "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Court said, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* It went on to make clear that "nothing in our opinion should be taken to cast doubt on [such] longstanding prohibitions." *Id.* It then "identif[ied several more of] these presumptively lawful regulatory measures [] as examples," which included "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-67 & n.26.

Following *Heller* and *McDonald v. City of Chicago*, this circuit adopted a two-step inquiry to evaluate whether a firearms regulation comports with the Second Amendment:

> [T]he first inquiry is whether the conduct at issue falls within the scope of the Second Amendment right. . . . If the challenged law burdens conduct that falls outside the Second Amendment's scope, then the law passes constitutional muster. If the law burdens conduct that falls within the Second Amendment's scope, we then proceed to apply the appropriate level of means-ends scrutiny. We agree with the prevailing view that the appropriate level of scrutiny depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.

*BATF*, 700 F.3d at 194-95 (citations and quotation marks omitted). We proceed to evaluate the Texas scheme according to this test.

No. 12-10091

*1. Step one*

The first question is whether the challenged conduct is even within the scope of the Second Amendment right. Here, the Texas statutes collectively prohibit carrying a handgun in public by 18-20-year-olds. This court has held that statutes enacted to safeguard the public using age-based restrictions on access to and use of firearms are part of a succession of "longstanding prohibitions," *Heller*, 554 U.S. at 626, that are likely outside the scope of the Second Amendment, because such restrictions are "consistent with" both the "longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety" and the "longstanding tradition of age- and safety-based restrictions on the ability to access arms," *BATF*, 700 F.3d at 203. In *BATF*, the court held that a federal law that restricted 18-20-year-olds' access to and use of firearms by prohibiting federally licensed firearms dealers from selling handguns to those under 21 was consistent with these traditions, because Congress had passed the law to deter violent crime by restricting the ability of minors under 21, who were relatively immature, to buy handguns. *Id.* The Texas scheme restricts the same age group's access to and use of handguns for the same reason. Therefore, under circuit precedent, we conclude that the conduct burdened by the Texas scheme likely "falls outside the Second Amendment's protection." *Id.*

*2. Step two*

Notwithstanding this conclusion, we face the same concern about the "institutional challenges in conducting a definitive review of the relevant historical record," *id.* at 204, that the court faced in *BATF*. This concern leads us to proceed to the second step of the analysis, just as the *BATF* court did.

In the second step, we initially determine which level of scrutiny to apply. "[T]he appropriate level of scrutiny depends on [1] the nature of the conduct being regulated and [2] the degree to which the challenged law burdens the

10

right." *Id.* at 195 (citation and quotation marks omitted). "A law that burdens the core of the Second Amendment guarantee – for example, 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home,' – would trigger strict scrutiny." *Id.* at 205 (quoting *Heller*, 554 U.S. at 635). "[A] less severe law" only "requires the government to show a reasonable fit between the law and an important government objective." *Id.*

This court held that the age-based federal statute challenged in *BATF* "[u]nquestionably" triggered nothing more than the latter, intermediate scrutiny. *Id.* The court first concluded that the federal statute does not burden the core of the Second Amendment based on (1) the fact that the law is "not a salient outlier in the historical landscape of gun control" and, (2) "unlike the D.C. ban in *Heller*, this ban does not disarm an entire community, but instead prohibits commercial handgun sales to 18-to-20-year-olds – a discrete category." *Id.* Furthermore, the court observed, "[t]he Second Amendment, at its core, protects 'law-abiding, *responsible*' citizens," and Congress had determined that persons under 21 tend to be irresponsible and emotionally immature, and can be thrill-bent and prone to criminal behavior. *Id.* at 206 (quoting *Heller*, 554 U.S. at 635) (emphasis added in *BATF*).

The court also gave three reasons why, even if the Second Amendment rights of 18-20-year-olds come within the core of the amendment, the degree to which the federal statute burdens those rights is not severe: (1) the law affects only handgun sales, rather than completely banning handgun possession and use; (2) the law does not prevent 18-20-year-olds from possessing and using guns in defense of hearth and home; and (3) the law's age qualification has only a temporary effect that ends as soon as the person turns 21. *See id.* at 206-07. Because the federal law does not burden the core of the Second Amendment right and, even if it does, the degree of burden is not severe, the *BATF* court held that the law warranted intermediate scrutiny.

11

The *BATF* court's rationales for why an age-based restriction on gun possession and use does not burden the core of the Second Amendment right apply equally to the state's age-based restriction here. Moreover, we cannot say that, even if 18-20-year-olds' gun rights are at the core of the Second Amendment, the Texas scheme burdens those rights to any greater degree than the federal law challenged in *BATF*. As in *BATF*, the restriction here has only a temporary effect. And, because it restricts only the ability to carry handguns in public, it does not prevent those under 21 from using guns in defense of hearth and home. Finally, it is not a complete ban on handgun use; it bans such use only outside a home or vehicle. Therefore, we must follow our decision in *BATF* and apply intermediate scrutiny to the Texas laws.

In order to withstand intermediate scrutiny, the Texas scheme must be reasonably adapted to achieve an important government interest. *Id.* at 207. Furthermore, "[t]he justification must be genuine, not hypothesized or invented *post hoc* in response to litigation," or relying "on overbroad generalizations." *United States v. Virginia*, 518 U.S. 515, 533 (1996).

The Texas laws advance the same important government objective as the one upheld in *BATF* under the intermediate scrutiny standard, namely, advancing public safety by curbing violent crime. *BATF*, 700 F.3d at 209 ("'The legitimate and compelling state interest in protecting the community from crime cannot be doubted.'" (quoting *Schall v. Martin*, 467 U.S. 253, 264 (1984))). Evidence in the record shows that curbing gun violence by keeping handguns out of the hands of immature individuals was in fact the goal of the state legislature in enacting the licensing provision. And historical analysis in the record indicates that Texas implemented the general criminal provision to keep its public spaces safe. Federal statistics also back up this rationale. *Id.* at 208-10.

Texas's handgun carriage scheme is substantially related to this important government interest in public safety through crime prevention. The discussion

in *BATF* and the record in this case emphasize that those under 21 years of age are more likely to commit violent crimes with handguns than other groups. Nevertheless, plaintiffs argue that the laws are ill-adapted to promote public safety because they are overbroad and, in any event, will not further the state's proffered goal. Plaintiffs contend that the Texas scheme is too broad because it amounts to a total ban on carrying handguns in public by 18-20-year-olds. They further challenge the breadth of the Texas scheme by arguing that the laws assume that all 18-20-year-olds are too immature to carry a handgun in public. The number of modifiers plaintiffs must use by itself undermines both these arguments: the Texas laws prohibit (1) 18-20-year-olds from (2) publicly carrying (3) handguns. First, the Texas laws have a similarly "narrow ambit" as the federal law in *BATF*. *Id.* at 205. Both the state scheme and the federal laws target the "discrete category" of 18-20-year-olds. *Id.* Second, the state scheme is in some ways more related to Texas's public safety objective that the law in *BATF*, because the state laws only regulate those persons who carry guns in public. Third, the Texas scheme restricts only the carrying of one type of gun – handguns. It is true, as plaintiffs claim, that Texas could have taken other, less restrictive approaches, such as allowing 18-20-year-olds to get a license if they demonstrate a particularly high level of proficiency and responsibility with guns. But the state scheme must merely be reasonably adapted to its public safety objective to pass constitutional muster under an intermediate scrutiny standard. Texas need not employ the least restrictive means to achieve its goal. Given the substantial tailoring of the Texas scheme, plaintiffs overbreadth argument is unpersuasive.

Plaintiffs next argue that Texas's scheme will not promote public safety. They first contend that the scheme "assumes that 18-20-year-olds who *are* disposed toward violent criminal behavior will refrain from carrying a handgun if doing so is unlawful." That assumption would be far-fetched, since it is not

No. 12-10091

clear why those disposed to violent criminal behavior would refrain from violating the statutory ban on publicly carrying handguns. But Texas is not necessarily making such an assumption. The state may also wish to have a way to take 18-20-year-olds who are disposed to violence off the street before they commit such violence. Convicting them of carrying a gun in public would accomplish this goal. Second, plaintiffs note that 18-20-year-olds are at greater risk of harm by violent offenders than older persons. They do not, however, say who perpetrates such harm or where it occurs. If members of the 18-20-year-old age cohort are at greater risk of harm from peers with guns, then the Texas scheme may reduce the risk. And if the harm occurs in the home, the laws, while not reducing this risk, will not prevent the 18-20-year-olds from defending themselves in their residences.

Texas determined that a particular group was generally immature and that allowing immature persons to carry handguns in public leads to gun violence. Therefore, it restricted the ability of this particular group to carry handguns outside their vehicles in public. This means is substantially related to the Texas's stated goal of maintaining public safety, and it still allows 18-20-year-olds to have handguns in their cars and homes and to apply for concealed handgun licenses as soon as they turn 21. The Texas scheme thus survives intermediate scrutiny, and we affirm the district court's conclusion that it does not violate the Second Amendment.

*D. Equal protection claim*

Plaintiffs argue that the Texas scheme denies them equal protection of the laws because it burdens their fundamental right to bear arms. They contend that the state scheme cannot survive the strict scrutiny it must withstand for burdening such a fundamental right. Whether or not Texas's scheme satisfies the strict scrutiny standard is not the question presented by this appeal.

14

No. 12-10091

"'Equal protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.'" *Id.* at 211-12 (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976)). If a law does not implicate such a protected right or class, then it need only be rationally related to a legitimate government interest to survive an equal protection challenge. *Id.* at 212. And for such laws, plaintiffs "'bear[] the burden of proving the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Id.* (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)).

Because the state scheme does "not impermissibly interfere with Second Amendment rights," *id.* at 212, or disadvantage a protected class,[7] it does not trigger strict scrutiny. We evaluate the Texas statutes merely to determine that they rationally relate to a legitimate government interest. Plaintiffs did not attempt to carry their burden by showing that the state scheme is irrational in the district court or on appeal. Moreover, we concluded in the previous section that the scheme survives the more stringent intermediate scrutiny. Therefore, we affirm the district court's decision to uphold the Texas scheme against plaintiffs' equal protection challenge.

## CONCLUSION

Because plaintiffs Jennings and Harmon are now 21, we REMAND their claims to the district court with instructions to dismiss them as moot. We also REVERSE the district court's ruling that the remaining plaintiffs do not have standing to challenge Texas's general criminal provision barring persons from carrying handguns in public. Finally, with respect to the general criminal

---

[7] As the district court noted, neither age nor military status is a suspect classification. Plaintiffs do not argue that they are members of or that the laws discriminate on the basis of any other suspect classification.

15

provision, we RENDER, and with respect to the licensing law we AFFIRM the district court, holding that the Texas scheme does not violate the Second Amendment or the Equal Protection Clause.