# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 27, 2008

Charles R. Fulbruge III
Clerk

No. 07-10302

MOTIENT CORP.

Plaintiff-Appellant

v.

JAMES D. DONDERO; HIGHLAND CAPITAL MANAGEMENT SERVICES,
INC.; HIGHLAND CAPITAL MANAGEMENT, L.P.; HIGHLAND
CRUSADER OFFSHORE PARTNERS, L.P.; HIGHLAND EQUITY FOCUS
FUND, L.P.; HIGHLAND LEGACY LIMITED; HIGHLAND SELECT
EQUITY FUND, L.P.; PAMCO CAYMAN, LTD.; PROSPECT STREET HIGH
INCOME PORTFOLIO, INC.; PROSPECT STREET INCOME SHARES,
INC.; STRAND ADVISORS, INC.

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS and SOUTHWICK, Circuit Judges, and CLARK, District Judge.[*]

CLARK, District Judge:

This is a suit for damages and injunctive relief under the Securities
Exchange Act, 15 U.S.C. § 78m(d) (1934) (amended 1970). The district court
correctly held that there is no private cause of action for monetary damages
under the Act and dismissed the suit for failure to state a cause of action.

---

[*] District Judge for the Eastern District of Texas, sitting by designation.

However, circumstances changed during the pendency of the appeal so that there is no longer any threat of irreparable harm and the request for injunctive relief is now moot. Therefore, we affirm the district court's denial of money damages and remand in part, with directions to dismiss the claims for injunctive relief without prejudice.

I.

This securities case arose out of Defendant-Appellee James Dondero's attempted corporate takeover of Motient.[1] Dondero is the majority owner and President of Highland Capital Management, an investment company, and also the "ultimate parent entity" for Defendants-Appellees Highland Prospect Street High Income Portfolio, Inc., Prospect Street Income Shares, Inc., Highland Legacy Limited, Highland Crusader Offshore Partners, L.P., PAMCO Cayman, Ltd., Highland Equity Focus Fund, L.P., Highland Select Equity Fund, L.P., and Highland Capital Management Services, Inc. (collectively, the "Highland Entities," and with Dondero, referred to as "Highland").

Through one or more of the Highland Entities, Dondero purchased approximately $33 million (face value), or approximately ten percent, of Motient's outstanding high-yield debt prior to 2002. Dondero's debt investment in Motient was later converted to equity, and Dondero was invited to serve on its Board of Directors.

On June 10, 2002, pursuant to Section 13(d) of the Securities Exchange Act, 15 U.S.C. § 78m(d) (1934) (amended 1970) ("Schedule 13(d)"), several of the Highland Entities filed a Schedule 13D indicating that they were members of a group that beneficially owns in excess of five percent of Motient's common stock

---

[1] A recent press release, dated August 13, 2007, indicates that Motient Corporation has changed its name to TerreStar Corporation ("TerreStar"). Parties continue to refer to Appellant as "Motient."

("13D Group"). By April 19, 2005, the remaining Highland Entities joined the 13D Group.

Motient alleges that while it was addressing the issues with its stock, Dondero began planning to take over Motient by using Schedule 13D amendments to publicly oppose Motient's board. Motient argues that Highland filed amendments containing false, incomplete, and misleading information about the company, its management, and its board. Specifically, Motient challenges six of these amendments filed during the September % October 2005 time period involving three topics: an exchange offer, a roll-up transaction and committee actions.

First, Motient claims that Highland attempted to derail an exchange offer, which would allow investors who purchased Series A Preferred Stock to exchange, on a one-for-one basis, these shares for new shares of Series B Preferred Stock in order to correct a voting rights issue (hereinafter referred to as "Exchange Offer"). Motient argues that he did so by painting Motient management in a bad light by stating that Motient's board had not met to discuss or evaluate the exchange offer.

Second, Motient states that Highland opposed the consolidation or "roll-up" of MSV ("Mobile Satellite Ventures") and TerreStar into Motient, which Motient's board believed would have enabled each company to more effectively raise capital for building their next generation satellite/terrestrial communications system (hereinafter referred to as "Roll-Up Transaction"). According to Motient, the implied valuations that Dondero deduced from the Roll-Up Transaction were inconsistent with the actual valuations shared with Dondero at board meetings. Motient asserts that the Amendment misstates the ownership percentage that existing Motient shareholders would have following the Roll-Up Transaction. Motient claims Dondero failed to disclose that Motient

has worked with independent financial advisors when structuring the transaction.

Third, Motient alleges that Highland's SEC filings accused the Audit Committee of failing to conduct a proper investigation of allegations he had made against board members, consultants, and third parties concerning apparent self-dealing, conflicts of interest, fiduciary lapses, and excessive payments (hereinafter referred to as "Board and Audit Committee Actions").

Motient asserts that the six 13D amendments filed in relation to these events contain statements by Motient that were made intentionally, willfully, negligently and/or with reckless disregard for the truth.

Motient filed its First Amended Complaint, which specifies numerous public statements made by Dondero and one or more of the Highland Entities in their Schedule 13D amendments as being violative of Section 13(d). The complaint sought a declaratory judgment, an order that Highland immediately amend the Schedule 13D amendments, injunctive relief preventing Highland from taking further actions to purchase or sell Motient securities or solicit shareholder votes, and compensatory damages.

Dondero and the Highland Entities moved to dismiss Motient's First Amended Complaint for failure to state a claim under Rule 12(b)(6), arguing that Motient failed to satisfy the heightened pleading standard of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) (1995).

On August 7, 2006, the district court dismissed Motient's complaint without prejudice, giving Motient twenty days to replead. Instead, on August 28, 2006, Motient filed a notice of appeal. Because the district court's judgment was not yet final, this Court did not have jurisdiction, and on December 22, 2006, this Court granted Highland's motion to dismiss the appeal for lack of jurisdiction. Meanwhile, the district court signed a final judgment on December 1, dismissing Motient's claims without prejudice.

On December 18, 2006, Highland filed a motion to alter or amend judgment to dismiss the complaint with prejudice. The issue of mootness was not raised in this motion.[2] The district court entered an Amended Final Judgment on February 7, 2007, dismissing Motient's claims with prejudice, from which Motient now appeals.

II.

This Court reviews a dismissal of a civil complaint de novo. Barrie v. Intervoice-Brite, Inc., 397 F.3d 249, 254 (5th Cir. 2005). A motion to dismiss under Rule 12(b)(6) is not appropriate unless the plaintiff's pleadings on their face show, beyond a doubt, that the plaintiff cannot prove any set of facts sufficient to entitle him to relief. Garrett v. Commonwealth Mortgage Co., 938 F.2d 591, 594 (5th Cir. 1991). A Rule 9(b) dismissal is reviewed under the same de novo standard as a dismissal under Fed. R. Civ. P. 12(b)(6). See Shushany v. Allwaste, Inc., 992 F.2d 517, 520 (5th Cir. 1993). In determining whether a case was properly dismissed under Rule 12(b)(6), the reviewing court must assume all facts contained in the pleadings are true, Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633, 119 S. Ct. 1661 (1999), and view the facts in the light most favorable to the plaintiff. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). It is also well established that "[t]he district court's interpretation of a statute is . . . subject to de novo review." Withhart v. Otto Candles, LLC, 431 F.3d 840, 841 (5th Cir. 2005) (reviewing de novo district court's erroneous grant of motion to dismiss).

---

[2] The district court had previously rejected Highland's argument that Motient's claims for injunctive relief were moot because the Exchange Offer had been completed and the Roll-Up Transaction abandoned. In its order of August 7, 2006, the court stated that this did not "fully address the complained of harm" because Highland was still attempting to exercise control over Motient and had recently announced its intention to seek the election of a new board of directors.

III.

A.

In its Complaint, Motient sought "actual and compensatory damages." Motient argues that the district court erred by holding that there is no private right of action for money damages under Section 13(d). This is an issue of first impression in this Circuit.

In 1968, Congress added the Williams Act Amendments in response to a gap in the federal securities laws which permitted cash tender offers and other acquisitions resulting in shifts of corporate control without adequate disclosure of information to investors. H.R. Rep. No. 1711, at 2-3, reprinted in 1968 U.S.C.C.A.N. 2811, 2812-14; General Aircraft Corp. v. Lampert, 556 F.2d 90, 94 (1st Cir. 1977). This remedial measure imposes candid disclosure and reporting requirements on tender offers and on other attempts to purchase control of publicly traded corporations. Gearhart Industries, Inc. v. Smith Intern., Inc., 741 F.2d 707, 713 (5th Cir. 1984). The Williams Act was intended to give needed information to investors in target corporations in order to protect them from takeover bidders, who up to that point had been able to operate in secrecy, by getting needed information to investors. Id. Importantly, Congress did not enact the Act to "tip the scales in favor of management or its opponents, but to ensure that a public shareholder, confronted by cash tender for his stock, can obtain adequate information about the qualifications and intentions of the offering party before responding to the offer." Id.; see also Dan River, Inc. v. Unitex Ltd., 624 F.2d 1216, 1221 (4th Cir. 1980), cert. denied 449 U.S. 1101, 101 S. Ct. 896 (1981).

No other Circuit has found a private right of action for money damages under Section 13(d). The Second Circuit held that Section 13(d) does not provide a damages remedy to issuers. Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 286 F.3d 613, 620 (2d Cir. 2002). The Eleventh Circuit also

dismissed Section 13(d) claims brought by an issuer seeking money damages. See Liberty Nat. Ins. Holding Co. v. Charter, 734 F.2d 545, 564 n.41 (11th Cir. 1984) ("[T]he Exchange Act provides for private rights of action expressly in several other places . . . . We may infer from this that when it chose to do so, Congress knew how to create explicitly a private right of action on behalf of the issuer.").

The Williams Act was enacted to protect shareholders who are forced to make decisions between bidders and management. Since any material misstatement or omission to an investor who purchases or sells the security and actually relies on that information gives rise to a private cause of action under Section 18(a) of the Exchange Act, 15 U.S.C. § 78r(a), Section 18(a) provides the sole basis for a private right of action for damages resulting from a violation of Section 13(d). Hallwood Realty Partners, L.P., 286 F.3d at 620. Motient provides no compelling reason for recognizing a private right of action in favor of issuers for money damages.

We agree with the district court that there is no private cause of action for money damages under Section 13(d). Accordingly, the district court's judgment is affirmed insofar as it denies Motient's claim for "actual and compensatory damages."

## B.

In addition to requesting monetary damages, Motient also pled for injunctive relief. Because the district court correctly concluded that no private right of action exists under Section 13(d), the question is whether the following events, which occurred after Motient filed its complaint, removed any threat of irreparable harm and therefore moot the case:

(1) the completion of the Exchange Offer by October 31, 2005;

(2) the abandonment of the Roll-Up Transaction, as announced on February 2, 2006;

(3) the vote by shareholders in favor of the management's proposed slate of directors, which ended Highland's proxy fight on July 12, 2006; and

(4) the recent disclosure by Highland Entities that they had divested themselves of the rest of their holdings in Motient.

The first three events occurred before the district court issued its Order on August 7, 2006. The district court ruled that the fact that the Roll-Up Transaction and the Exchange Transaction had been completed did not "fully address the complained of harm" because "Defendants continue to try to exercise control over the company."

An actual case or controversy must exist at every stage in the judicial process. Karaha Bodas v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 365 (5th Cir. 2003). Because federal courts cannot give opinions on "moot questions or abstract propositions," Calderon v. Moore, 518 U.S. 149, 150, 116 S. Ct. 2066 (1996) (internal citation omitted), an appeal must be dismissed when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party. . ." Church of Scientology v. United States, 506 U.S. 9, 12, 113 S. Ct. 447 (1992) (internal citation omitted). Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." Arizonians for Official English v. Arizona, 520 U.S. 43, 68, 117 S. Ct. 1055, n.2 (1997) (internal citation omitted). A claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Karaha Bodas, 335 F.3d at 365 (internal citation omitted).

When deciding whether to disturb a prior judgment in a case that has been rendered non-justiciable, the court should inquire "whether the party seeking relief from the judgment below caused the [non-justiciability] by voluntary

action." U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 25, 115 S. Ct. 386, 391 (1994). When a civil case becomes moot on appeal, "the established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." Id. at 22 (citing United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S. Ct. 104 (1950)). Vacatur "'clears the path for future relitigation' by eliminating a judgment the loser was stopped from opposing on direct review." Id. (quoting Munsingwear, 340 U.S. at 40). Vacatur is in order when mootness occurs through the "unilateral action of the party who prevailed in the lower court." Id. at 23.

Now that Dondero and the Highland Entities no longer have any holdings in Motient, injunctive relief ordering amendment of any Schedule 13D amendments is inappropriate. We decline to issue an advisory opinion forbidding Highland from soliciting shareholder votes for a tender offer or engaging in a  contest for control, on the assumption that such activity might take place in the future.

There has been no showing that there will be any future harm, let alone irreparable harm. See Rondeau v. Mosineee Paper Corp., 422 U.S. 49, 59, 95 S. Ct. 2069, 2076 (1975) (holding that a private litigant alleging a violation of Section 13(d) must make a showing of irreparable harm, in accordance with traditional principles of equity, to entitle him to injunctive relief.) In any event, as "the principal object of the Williams Act is to solve the dilemma of shareholders desiring to respond to a cash tender offer," it is not clear that any "harm" identified by Motient is even redressable at this point. Id. Accordingly, because a showing of irreparable harm is required for injunctive relief, and each of Motient's factual arguments for irreparable harm have now vanished because of changed circumstances, there is no longer a case or controversy for this Court to decide.

As to any attempt by Highland to place directors on Motient's Board, that fight is over. Motient won. The divestiture by Highland of its holdings in Motient eliminated the right of any of the Appellees to oppose the new Board or to seek to elect new directors. While there is always the possibility that one or more of the Highland Entities may buy stock in the company that used to be called Motient, the lack of an imminent contest for control makes the possibility of any irreparable harm speculative at best. See Rondeau, 422 U.S. at 59, 95 S. Ct. at 2077. Any ruling by this or any other court would merely be a prediction of what the result should be if certain events were to occur at some unspecified future date.

We conclude that dismissal of claims for injunctive relief is proper because they became moot during the appeal through the unilateral action of the party that prevailed in the lower court: i.e., the divestiture by Highland of its holdings in Motient. Because, as the district court correctly held, no private cause of action exists for money damages under Section 13(d), no case or controversy remains. We AFFIRM the denial of money damages and REMAND in part with directions to dismiss the claims for injunctive relief without prejudice.