**Opinion issued December 29, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00969-CR

———————————

## EX PARTE CHRISTIAN CHARLES LEE

On Appeal from the County Criminal Court at Law No. 8
Harris County, Texas
Trial Court Case No. 2215871

## OPINION

Appellant, Christian Charles Lee, was charged with the offense of unlawfully

carrying a firearm in his vehicle while a member of a criminal street gang, in

violation of section 46.02(a-1)(2)(C) of the Texas Penal Code. *See* TEX. PENAL CODE

§ 46.02(a-1)(2)(C). Appellant filed a pre-trial application for writ of habeas corpus

challenging the statute as void under the First and Second Amendments to the United

States Constitution. After a hearing, the trial court issued a judgment denying the habeas application. Appellant filed a notice of appeal challenging the trial court's denial.

Asserting five points of error, Appellant argues that section 46.021(a-1)(2)(C) violates the First and Second Amendments because it (1) "is overbroad, and therefore fails strict scrutiny, under the Free Speech Clause;" (2) "violates the right to free association;" (3) "violates the peaceable assembly clause;" (4) "violates the right to keep and bear arms clause;" and (5) "conditions the exercise of one right on the surrender of others." We affirm the trial court's denial of habeas relief.

**The Statute**

Section 46.02(a-1)(2)(C) of the Texas Penal Code makes it a crime for a person who is a member of a criminal street gang to carry a handgun in a motor vehicle under the person's control:

> (a-1) A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun in a motor vehicle or watercraft that is owned by the person or under the person's control at any time in which:
>
> …
>
> (2) the person is:
>
> …
>
> (C) a member of a criminal street gang, as defined by Section 71.01.

TEX. PENAL CODE § 46.02(a-1)(2)(C). Under section 71.01(d), a "criminal street gang" is defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX. PENAL CODE § 71.01(d).

**Availability of Pretrial Habeas**

Pretrial habeas corpus proceedings are separate criminal actions, and the applicant has the right to an immediate appeal before trial begins. *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 650 (Tex. Crim. App. 2005). A claim is cognizable in a pretrial writ of habeas corpus if, resolved in the defendant's favor, it would deprive the trial court of the power to proceed and result in the appellant's immediate release. *Ex parte Smith*, 185 S.W.3d 887, 892 (Tex. Crim. App. 2006) (citing *Ex Parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001)). A claim that a statute is unconstitutional on its face may be raised by pretrial writ of habeas corpus because the invalidity of the statute would render the charging instrument void. *Ex parte Weise*, 55 S.W.3d at 620. Although a pretrial habeas application can be used to bring a facial challenge to the constitutionality of the statute, it may not be used to advance an "as applied" challenge. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). Here, because Appellant asserts a facial challenge to the constitutionality of section 46.021(a-1)(2)(C), his challenges were

3

properly raised in a pretrial habeas application and we consider whether the trial court erred in denying the application.

## Standard of Review

In general, we review a trial court's ruling on an application for writ of habeas corpus using an abuse-of-discretion standard, and we view any evidence in the light most favorable to that ruling and defer to implied factual findings supported by the record. *Ex parte Flores*, 483 S.W.3d 632, 638 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). However, whether a statute is facially unconstitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Ex parte Flores*, 483 S.W.3d at 638.

Facial challenges to the constitutionality of a statute must illustrate that the statute operates unconstitutionally in all of its applications. *See Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018); *State ex rel. Lykos v. Fine,* 330 S.W.3d 904, 908–09 (Tex. Crim. App. 2011). To resolve such challenges, we consider the statute only as written without reference to evidence or facts peculiar to the complainant. *See Lykos*, 330 S.W.3d at 908–09.

In considering a facial challenge, we usually presume "that the statute is valid and that the legislature has not acted unreasonably or arbitrarily," and the party challenging the statute bears the burden of establishing that it is unconstitutional. *Ex parte Lo*, 424 S.W.3d at 15. This presumption does not apply, however, if the

government regulates speech based on its content. *Id.* (citing *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817 (2000)). Content-based regulations—those regulations that distinguish favored from disfavored speech based on the idea or message expressed—are presumptively invalid, and the government bears the burden to rebut that presumption. *Id.*

## Discussion

### *First Point of Error: First Amendment Right of Free Speech*

In Appellant's first point of error, he claims that section 46.02(a-1)(2)(C) unconstitutionally abridges the First Amendment right of free speech. Specifically, Appellant asserts that "The Statute is overbroad, and therefore fails strict scrutiny, under the Free Speech Clause." In other words, Appellant contends that section 46.02(a-1)(2)(C) fails strict scrutiny because it is overbroad. Appellant, however, applies the wrong level of scrutiny and erroneously conflates First Amendment overbreadth analysis with strict scrutiny analysis. As discussed below, the statute survives the appropriate level of scrutiny—in this case, intermediate scrutiny—and is not unconstitutionally overbroad.

#### *Level of Scrutiny*

Whether the regulation is content-neutral or content-based dictates the level of scrutiny that we will apply. *Martinez v. State*, 323 S.W.3d 493, 504–05 (Tex. Crim. App. 2010). Content-based regulations are "those laws that distinguish

favored from disfavored speech based on the ideas expressed." *Ex parte Lo*, 424 S.W.3d at 15 (citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994)). Such a regulation may be upheld only if it is necessary to serve a compelling state interest and employs the least speech-restrictive means to achieve its goal. *Id*. Although content-based regulations trigger strict scrutiny, content-neutral regulations and regulations that are justified without reference to the speech's content must only satisfy intermediate scrutiny. *Turner Broad. Sys*, 512 U.S. at 642; *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Additionally, regulations that do not "fit neatly into either the 'content-based' or the 'content-neutral' categories," but are aimed at addressing the "secondary effects" of speech are subject to intermediate scrutiny. *City of Renton v. Playtime Theatres, Inc*., 475 U.S. 41, 47-50 (1986). A regulation satisfies intermediate scrutiny if it promotes a significant governmental interest and does not burden substantially more speech than necessary to further that interest. *See McCullen v. Coakley*, 573 U.S. 464, 486 (2014); *Ex parte Thompson*, 442 S.W.3d 325, 344 (Tex. Crim. App. 2014).

Appellant asserts that strict scrutiny applies because "a restriction on gang signs and symbols is a content-based restriction."[1] Appellant's claim that the statute

---

[1] Appellant cites *Martinez v. State*, 323 S.W.3d 493, 505 (Tex. Crim. App. 2010). In *Martinez*, the Court of Criminal Appeals held that an injunction prohibiting the use of gang hand signs or other symbols that identify membership in a combination was content-based because it banned the particular message associated with the signs or symbols. *Martinez*, 323 S.W.3d at 497, 505. The court observed, however, that an

penalizes an expressive element—in this case, the "common sign, symbol, or color"—is misplaced. Instead, the statute criminalizes weapon possession under certain circumstances—namely, while a person is simultaneously (1) located in a vehicle owned by, or under control of, the person, and, (2) a member of a criminal street gang. *See* TEX. PENAL CODE § 46.02(a-1)(2)(C).

The same First Amendment challenges to section 46.02(a-1)(2)(C) as a content-based restriction were addressed and rejected by the Fourteenth Court of Appeals in *Ex parte Flores*. 483 S.W.3d 632. As our sister court in *Flores* correctly stated, "it is far from clear that this statute regulates handgun possession in a vehicle based on the message expressed by this sign or symbol, particularly given that the sign or symbol need not be used in connection with the gun possession (and may not be used at all if the group has an identifiable leadership)." *Id.* at 640. Even assuming enforcement would require reference to such signs or symbols, such reference is content neutral because the statute actually regulates handgun possession in vehicles. *Id.*; *see also Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others").

---

order "bann[ing] all hand signs" would not be content-based. *Id.* at 505.Unlike the injunction in *Martinez*, the statute in this case does not prohibit any expressive content.

Appellant asserts that "[t]he Fourteenth Court in *Flores* got free speech wrong" because (1) "regulations on handgun possession in vehicles may abridge liberties that appear totally unrelated to handguns" and (2) although the statute does not prevent use of gang signs and symbols, it discourages them "by depriving [gang members] of their right to bear arms in their vehicles for self-defense." We disagree and find Appellant's arguments regarding potential incidental effects on speech unpersuasive.[2]

The Supreme Court has held that "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791. If the regulation is aimed at the "secondary effects" that tend to accompany such expression, so that it is "justified without reference to the content" of the expression, the regulation will be subject to intermediate scrutiny. *City of Renton*, 475 U.S. at 47–48; *see also R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 389–90 (1992); *Ex parte Thompson*, 442 S.W.3d at 345–46; *Texas Dept. of Transp. v. Barber*, 111 S.W.3d 86 93–95, 100 (Tex. 2003).

As the Fourteenth Court recognized, "[s]ection 46.02(a-1)(2)(C) falls into this category because it is regulating not the direct impact of viewing identifying signs,

---

[2]    Appellant incorrectly attempts to insert arguments regarding associational, assembly, and Second Amendment rights into his argument regarding free speech. We address these arguments separately below.

but the secondary effect of gun violence by gang members who sometimes use such signs." *Flores*, 483 S.W.3d at 641. The State has a compelling interest in ensuring the safety of its citizens by eliminating gang violence and other criminal activities. *Id.* (citing *Martinez*, 323 S.W.3d at 505–06). The justification of controlling such violence is unrelated to any message likely to be expressed by identifying signs. *Id.* Any reference to the content of a sign or symbol in the statute is not due to any disagreement with the content or message, "but because the sign identifies those people whose possession of a handgun in a vehicle is more likely to lead to violent secondary effects." *Id.* Moreover, a person can avoid the statute's incidental limits on use of identifying signs or symbols by not carrying a handgun in a vehicle, which confirms that the statute's focus is not on suppressing expression. *Id.* Because the statute regulates the secondary effects of gun violence related to gang activity, and not the display of gang-related colors, symbols or signs, the statute triggers intermediate scrutiny and not strict scrutiny. *See id.*

For these reasons, we hold Appellant's contention that section 46.02(a–1)(2)(C) facially abridges freedom of speech is subject to intermediate scrutiny. As in *Flores*, Appellant's brief does not challenge the trial court's implied finding that the statute is constitutional under an intermediate scrutiny analysis. *See id.* Accordingly, section 46.02(a-1)(2)(C) does not unconstitutionally infringe upon Appellant's free speech rights under the First Amendment.

*Overbreadth*

Appellant's overbreadth argument is that (1) "Because the speech restricted by section 46.02(a-1)(2)(C) is wholly protected by the First Amendment from content-based restriction, the statute restricts a real and substantial amount of protected speech" and (2) "Because section 46.02(a-1)(C) [sic] restricts a real and substantial amount of protected speech based on its content, it is not narrowly tailored, but instead is substantially overbroad." Appellant's assertion that a statute is overbroad if it regulates the content of speech erroneously conflates overbreadth with applying strict scrutiny. For the reasons discussed above, Appellant's argument fails at the outset because the statute does not regulate speech based upon content and is subject to intermediate rather than strict scrutiny. To the extent that a separate overbreadth argument not based upon the application of strict scrutiny can be discerned from Appellant's brief, we examine such an argument below.

"The overbreadth doctrine is 'strong medicine' to be employed with hesitation and only as a last resort." *Ex parte Thompson*, 442 S.W.3d at 349 (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)). A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984). Laws that inhibit the exercise of First Amendment rights will be held facially invalid as overbroad only if the

10

impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973); *see also Ex parte Wheeler*, 478 S.W.3d 89, 94 (Tex. App. —Houston [1st Dist.] 2015, pet. ref'd) ("According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a 'substantial' amount of protected speech 'judged in relation to the statute's plainly legitimate sweep.'") (quoting *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003)).

The overbreadth doctrine prohibits the government from 'banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.'" *Wagner v. State*, 539 S.W.3d 298, 310 (Tex. Crim. App. 2018) (quoting *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002)). But, as discussed, section 46.02(a-1)(2)(C) does not ban any speech. Even if it did, Appellant fails to demonstrate that the statute prohibits a substantial amount of protected speech judged "in relation to the statute's plainly legitimate sweep." *Wagner*, 539 S.W.3d at 310; *Ex parte Wheeler*, 478 S.W.3d at 94.

Appellant summarily asserts that the statute is overbroad because it "restricts a real and substantial amount of protected speech" but fails to provide support demonstrating that any restriction on protected speech is "substantial." Moreover, the statute must prohibit a substantial amount of protected speech judged "in relation to the statute's plainly legitimate sweep." *See Wagner*, 539 S.W.3d at 310; *Ex parte*

11

*Wheeler*, 478 S.W.3d at 94. Appellant does not dispute the legitimate sweep of the statute. Instead, Appellant attempts to avoid any weighing of the statute's legitimate sweep by arguing that "[b]ecause section 46.02(a-1)(2)(C) restricts a real and substantial amount of protected speech, it is not narrowly tailored; because it is not narrowly tailored, it is not necessary to consider whether it promotes a compelling government interest." Appellant's attempt to read away any weighing of the statute's legitimate sweep is contrary to well-established caselaw. Once again, Appellant's argument that the statute is "not narrowly tailored" incorrectly conflates strict scrutiny (which is not applicable) and overbreadth.

Accordingly, Appellant has not satisfied his burden of demonstrating that the impermissible applications of the law, if any, are substantial when judged in relation to the statute's plainly legitimate sweep. *Broadrick*, 413 U.S. at 612–615.

### Second Point of Error: First Amendment Right to Associate

In his second point of error, Appellant claims that—distinct from his free speech claims—section 46.02(a-1)(2)(C) abridges his First Amendment associational rights because the statute targets members of criminal street gangs. In doing so, Appellant tries to fit the square peg of criminal street gang affiliation into the round hole of associational rights. As with Appellant's first point of error, this argument was also addressed and rejected by the Fourteenth Court in *Flores*. *See*

*Flores*, 483 S.W.3d at 641-42. We agree with our sister court that section 46.02(a-1)(2)(C) does not interfere with associational rights. *Id*. at 642

The First Amendment protects freedom of association in two distinct contexts, neither of which is implicated here. One line of cases involves certain "intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984). These types of relationships "are those that attend the creation and sustenance of a family." *Id*. at 617–20 (discussing freedom of association in this context). Another line of cases involves "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id*. at 618. "[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id*. at 622 (citing cases). This right of "expressive association" does not provide generalized protection for "social association," however. *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

The *Flores* court correctly held that section 46.02(a-1)(2)(C) does not implicate either of these categories of protected association. *See Flores*, 483 S.W.3d at 642. The statute does not address family relationships. Nor does it prevent gang

members from gathering to engage in any activities protected by the First Amendment, including the use of identifying signs or symbols. Rather, this statute prevents people from carrying handguns in their vehicles—an activity that does not convey a particular message—if they also regularly associate in committing criminal activities.

### Third Point of Error: First Amendment Right to Peaceable Assembly

In his third point of error, Appellant claims that section 46.02(a-1)(2)(C) violates Appellant's right to assembly. But Appellant fails to cite any cases regarding the freedom of assembly. Instead, Appellant analogizes, without support, "assembly" to "speech." Appellant then injects the word "assembly" into the place of "speech" in selected quotations from *U.S. v. Stevens*, 599 U.S. 460, 470 (2010). In an attempt to rewrite these quotations from *Stevens*, Appellant asserts the following in his brief:

> The right to assembly is affected by this millennium's free-speech First Amendment Supreme Court jurisprudence: as the guarantee of free speech "does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits, so does "[o]ur Constitution foreclose[] any attempt to revise [its] judgment [that peaceable assembly is protected] simply on the basis that some [assembly] is not worth it."

*Stevens,* however, concerns a First Amendment freedom of speech challenge and does not provide any guidance on, much less mention, the right to assembly. The actual text from *Stevens* reads as follows:

14

The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it.

*Stevens*, 599 U.S. at 470. Appellant's attempted refashioning of *Stevens* is misplaced. Appellant fails to provide any support for the proposition that "assembly" and "speech" are afforded the same protections. *See Thomas v. Collins*, 323 U.S. 516, 323 (1945) (stating that, although speech and peaceable assembly are inseparable, they are "not identical").

Assuming that the right to "assembly" is distinct from the right to associate, its purposes are not implicated in this case. The right to peaceable assembly has largely been construed in the context of marches and demonstrations. *See*, *e.g.*, *Shuttlesworth v. City of Birmingham, Ala*., 394 U.S. 147 (1969) (reviewing permitting system for "parade or procession or other public demonstration"); *Gregory v. City of Chicago*, 394 U.S. 111 (1969) (reviewing arrest for holding a demonstration); *Brown v. Louisiana*, 383 U.S. 131 (1966) (same). The purpose of peaceable assembly is "for lawful discussion." *Thomas*, 323 U.S. at 539; *see also CISPES (Comm. in Solidarity with People of El Salvador) v. F.B.I.,* 770 F.2d 468, 477 (5th Cir. 1985) (holding that statute did not infringe on right to assembly because "the statute does not prevent simple peaceable assembly for the purpose of lawful

15

discussion, which of course, cannot be made a crime."); *Faulk v. State*, 608 S.W.2d 625, 630–31 (Tex. Crim. App. 1980) (holding that Texas's riot statute did not violate right to assemble because it prohibited participation in "unlawful" assembly). The purpose of a criminal street gang, as defined in the statute, is not for lawful discussion, but to "continuously and regularly associate in the commission of criminal activities." TEX. PENAL CODE § 71.01(d). Moreover, the possession of a firearm in a motor vehicle is not "lawful discussion" and does not convey an idea or thought. Accordingly, the statute does not implicate the right to assembly.

### Fourth Point of Error: Second Amendment Right to Bear Arms

In his fourth point of error, Appellant contends that section 46.02(a-1)(2)(C) violates the Second Amendment to the United States Constitution. We disagree.

The Second Amendment provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II. The Supreme Court has recognized, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Further, "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. The Court has identified, among other things, that particular classes of persons may be lawfully prohibited from carrying firearms. *Id*. at 626-27, n.26. Although the Court has specifically listed felons and

16

insane persons, its list is non-exhaustive. *See id.*; *see also Nat'l Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d. 338, 347 (5th Cir. 2013) (recognizing the "longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety") (quoting *Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d. 185, 203 (5th Cir. 2012) (hereinafter "*B.A.T.F.E.*")).

Assuming that a Second Amendment right is implicated in this case, the level of scrutiny that applies depends upon whether the law burdens the "core" of the Second Amendment guarantee. *See Bezet v. United States*, 714 F. App'x 336, 340 (5th Cir. 2017). If a core right is burdened, strict scrutiny applies; less severe regulations on more peripheral rights trigger intermediate scrutiny. *Id.*

Appellant asserts that the statute is subject to strict scrutiny because it restricts a core purpose of the Second Amendment, self-defense. The State asserts that the "core" of the Second Amendment—the type of conduct that requires strict scrutiny protection—is limited to self-defense in the home.[3] But we need not decide whether

---

3    *See*, *e.g.*, *United States v. McGinnis*, 956 F.3d 747, 754 (5th Cir. 2020) ("Under this framework, a 'regulation that threatens a right at the core of the Second Amendment'—i.e., the right to possess a firearm for self-defense in the home—'triggers strict scrutiny,' while 'a regulation that does not encroach on the core of the Second Amendment' is evaluated under intermediate scrutiny.") (quoting *B.A.T.F.E.*, 700 F.3d at 206); *Gould v. Morgan*, 907 F.3d 659, 671 (1st Cir. 2018) ("[T]he core Second Amendment right is limited to self-defense in the home."); *Woollard v. Gallaghar*, 712 F.3d 865, 875 (4th Cir. 2013) ("[I]ntermediate scrutiny applies 'to laws that burden [any] right to keep and bear arms outside of the home.'") (quoting *United States v. Masciandaro*, 638 F.3d 458, 470-71 (4th Cir. 2011));

17

the core of the Second Amendment is limited to self-defense in the home to conclude that intermediate scrutiny applies in this case. Whether inside or outside of the home the core of the Second Amendment protects "law-abiding, responsible citizens." *See B.A.T.F.E.*, 700 F.3d at 206 ("The Second Amendment, at its core, protects 'law-abiding, responsible' citizens.") (citing *Heller*, 554 U.S. at 635). Like statutes restricting firearm possession by felons and the mentally ill, section 46.02(a-1)(2)(C)'s restricting firearm possession by members of a criminal street gang is an outgrowth of a long-standing tradition of regulating certain groups' access to arms for the sake of public safety. *See id*. at 205-06. Because the statute is analogous to longstanding, presumptively lawful bans on possession by felons and the mentally ill, the statute triggers an intermediate level of scrutiny. *See id.* at 206.

Even if Appellant could distinguish the statue from such presumptively lawful bans, intermediate scrutiny still applies in this case because the core right identified by the Supreme Court in *Heller* is the right of "law-abiding, responsible citizens" to possess and carry weapons for self-defense. *Heller*, 554 U.S. at 635. Because the statute restricts possession of firearms by individuals who are part of groups

---

*B.A.T.F.E.*, 700 F.3d at 206 (holding that laws prohibiting commercial sale of handguns to persons under 21 "do not strike the core of the Second Amendment because they do not prevent 18-to-20-year-olds from possessing and using handguns "in defense of hearth and home."); *see also Kachalsky v. County of Westchester*, 701 F.3d 81, 93 (2nd Cir. 2012); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010).

18

engaging in unlawful activities, it does not implicate the core right identified in

*Heller* and is thus subject to intermediate scrutiny. *See Wargocz v. Brewer*, No. 02-

17-00178-CV, 2018 WL 4924755, at \*7 (Tex. App.—Fort Worth Oct. 11, 2018, no

pet.) (mem. op., not designated for publication) ("Because the core right identified

in *Heller* protects law-abiding, responsible citizens and [appellant] is not such a

citizen, we apply intermediate scrutiny to his claim.") (citing *United States v.*

*Chapman*, 666 F.3d 220, 226 (4th Cir. 2012)). In evaluating a Second Amendment

challenge to a law prohibiting the sale of firearms to individuals under 21 years of

age, the Fifth Circuit explained as follows:

> Moreover, as with felons and the mentally ill, categorically restricting the presumptive Second Amendment rights of 18–to–20–year–olds does not violate the central concern of the Second Amendment. The Second Amendment, at its core, protects "law-abiding, *responsible*" citizens. *See Heller*, 554 U.S. at 635, 128 S. Ct. 2783 (emphasis added). Congress found that persons under 21 tend to be relatively irresponsible and can be prone to violent crime, especially when they have easy access to handguns. *See* Pub. L. No. 90–351, § 901(a)(6), 82 Stat. at 197, 225 (1968) (referring to "emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior"); *cf. Chester*, 628 F.3d at 682–83 (applying intermediate scrutiny to 18 U.S.C. § 922(g)(9), the federal domestic-violence-misdemeanant firearm possession ban, and holding that misdemeanant-plaintiff's claimed "right to possess a firearm in his home for the purpose of self-defense" was "not within the core right identified in *Heller*—the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense").

*B.A.T.F.E.,* 700 F.3d at 206. Here, section 46.02(a-1)(2)(C) regulates possession by

a group that is not law-abiding and, similar to the reasoning in *B.A.T.F.E.*, "tend to

be relatively irresponsible and can be prone to violent crime." *Id*. Moreover, unlike

bans of firearm possession by felons and the mentally ill, which "extinguish the Second Amendment rights of the class members by totally preventing them from possessing firearms," the statute in this case is not so extreme. *Id*. Far from a total prohibition on handgun possession by members of a criminal street gang, the statute only regulates firearm possession by such people in vehicles and does not prevent possession in the home.

Because section 46.02(a-1)(2)(C) does not restrict the core purpose of the Second Amendment, we apply intermediate scrutiny in evaluating Appellant's Second Amendment challenge to the statute. We conclude that the statute satisfies intermediate scrutiny because the statute is reasonably adapted to promote a significant governmental interest. First, it is undisputed that the State has a significant interest in regulating firearms possession by members of a criminal street gang. Second, the statute does not restrict firearm possession more than necessary to further that interest. Here, the statute is limited to regulating firearms possession in vehicles and does not burden the core right to bear a firearm in the home. The statute strikes a balance between the right to carry outside of the home—a right which receives less protection—and the public safety concerns regarding criminal street gang members driving around with firearms. In the same way that the State may restrict possession of firearms by felons due to public safety concerns, the State may restrict possession by members of a criminal street gang; the sole quality of which

under the statute is the continuous or repeated commission of crimes. *See* TEX. PENAL CODE § 71.01(d).

In sum, although the Second Amendment secures "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *Heller*, 554 U.S. at 635, it does not entitle members of a group that "continuously or regularly associate in the commission of criminal activities" to carry a firearm in a vehicle.

### *Fifth Point of Error: First and Second Amendment*

In his fifth point of error, Appellant claims that the statute violates both the First and Second Amendments conjunctively. Specifically, Appellant contends that to enjoy one right, he must surrender the other. To support this contention, Appellant cites to *Simmons v. United States*, a case dealing with use immunity in the context of establishing standing in a court proceeding, and the friction between the Fourth and Fifth Amendment's guarantees. *Simmons v. United States*, 390 U.S. 377 (1968). Appellant fails to explain the relevance of *Simmons* to his argument. Instead, Appellant summarily asserts that "[t]here appears to be no test for the surrender of one constitutional right for another," and that "nothing can justify making a person choose between one fundamental right (the constitutionally protected activity of associating with a criminal street gang) and another (the constitutionally protected activity of bearing a firearm in a motor vehicle for self-defense)." Appellant's argument is both unsupported and insufficiently briefed for consideration. In any

21

event, Appellant's claim that he must surrender a protected right under the statute is irrelevant because, as discussed, the statute violates neither the First nor the Second Amendment.

## Conclusion

For the foregoing reasons, we affirm trial court's judgment denying Appellant's pretrial application for writ of habeas corpus. We dismiss any pending motions as moot.

Gordon Goodman
Justice

Panel consists of Justices Lloyd, Goodman, and Hightower.

Publish. TEX. R. APP. P. 47.2(b).